My name is Adam Bleier. I am here on behalf of Mr. Earl Calvin Cates. I would also like to point out to the court that a relative of the appellant, the appellant's son, is present in the courtroom, joining us from Alabama in the front row. The sole issue at trial in this case was whether Mr. Cates, who was 79 at the time of his arrest, had knowledge of marijuana that was stored in the plumbing hold of his RV as he crossed the border, that the marijuana was in the vehicle was stipulated to at trial. And the sole issue was whether he knew that. Could you speak a little more loudly please? Sure. Thank you. The sole issue was whether he knew that, in fact, that marijuana was in the vehicle. On appeal, I present three issues to the court. The first issue has to do with trial counsel's ineffectiveness with respect to his failure to consult, investigate, consult, and hire and present the testimony of an expert witness who could have rebutted the testimony of the government's expert witness. At trial, the government essentially presented testimony, which this court has allowed, stating that in his experience as a government agent, it was not his experience and that it would make no sense, absolutely no sense, for somebody to be transporting marijuana without knowledge that the marijuana was in the vehicle. I also present a... What specifically did Agent Lee say in his affidavit that he would say that would lead a jury to consider this defense? Did he say it did happen here? Well, I don't think under the rules... I think yes or no is the answer. He would say it would be consistent with that what happened here was consistent with an unwitting courier. And on cross-examination, he'd undoubtedly have to say it's also consistent with knowledge. Yes. So isn't it really a counsel determination of whether you want to put up a person that gets blown, perhaps blown out of the water by cross-examination and just leave the facts as they are? I'm having difficulty seeing this as other than a tactical decision made by counsel for reasons perhaps he knew best. Obviously, there's a strong presumption that counsel acts strategically. However, I think if you look at Mr. Lee's affidavit and, in our opinion, look at the importance that Bortfeld, Agent Juan Bortfeld, his testimony to the government, to the state's case, I think you need to counterbalance that testimony. And, sure, I mean, Agent Bortfeld's testimony also could be consistent with knowledge or not knowledge. But I think when you have a situation as this where you have a government agent with years of undercover experience delivering marijuana saying this doesn't happen... He'd go through all of the changes that were made in the vehicle, the change in the water process, all the rest of these very substantial changes. Cross-examination, isn't that consistent with it? And then he would go on, how much was the street value of this marijuana? Is it really your experience that people trust this amount of marijuana to an unknown person? The cross-examination can be very extensive. And I don't see how you've met the presumption. Maybe you could be a little more specific. When we presumed that the trial counsel had reason for it, why would, in this case, we conclude that it might well have changed the outcome? Well, I think that Agent Lee's or former Agent Lee's testimony, he could be cross-examined about those things. But he could also testify to a number of things. One, that, first of all, Agent Klump, another witness in the case, testified that this modification of the plumbing hold took approximately or could take approximately eight hours. So that would be consistent with my client's testimony that the vehicle was out of his control for that period of time. I think Agent Lee would also testify that the value of the wholesale value of the marijuana in Mexico was actually much less than the street value in the United States. Oh, yes. It always is. And I think the agent could also bring up circumstances where this, in fact, does occur. And this is what the prosecutor argued in closing, that this doesn't make sense. It doesn't make sense. I think Agent Lee would strongly testify that it, in fact, does make sense and that drug dealers and drug smugglers are only limited by their imagination in the tactics they will use to cross the border. And that's just, I think if you just look at Agent Bortfeld's testimony, it really is as close to as possible as a government witness saying this is simply not possible. And I think Agent Lee would undermine that contention. And I think Mr. Kate standing alone on the stand and saying that simply wasn't enough. And that's how the presumption is overcome. And going back to that claim, I think Mr. Black, the trial counsel's argument in his affidavit that he simply didn't need an expert like this and had actually thought of that doesn't make any sense. Given his justifications that one, I always knew that Mr. Cates was going to testify, that doesn't excuse the fact that he needs to solidify his testimony and support his testimony and help defend his testimony. Well, if he's going to have an expert, the expert has to be provided with a basis. Now, my understanding, obviously I wasn't there at trial. Me neither. But my understanding is that when Mr. Cates testified, he couldn't remember virtually anything about this so-called incident. All he remembered was that he turned the vehicle over to someone whose name he didn't remember or didn't know, that there was an American involved whose name he didn't remember or didn't know. And he further testified, although the records belied that, that he'd been back and forth on the border 60 times, although the records showed only 7 or 8 times. He turns the vehicle over to have the plumbing fixed, right? Yes. Okay. He's a pretty exacting guy. He was an accountant is my understanding. He gets it back and the plumbing is not only not fixed, as a matter of fact, the toilet which used to flush now only flushes once or twice because all the space has been taken up by all this marijuana that's stuffed in there. What's the expert going to do here? I mean, I'm... Well, with respect to the... With respect to the inconsistency... It's like trying to grab onto a cloud here. Obviously, we don't agree with that. There were certainly inconsistencies that in my reply brief I attribute to problems that were also supported by the record in terms of his own memory, that the incidents in this case took place a year and a half prior to trial, and also I believe there were times, and it's supported by the trial record, where he had to leave to go to the restroom. I was not trial counsel at that time, and there were times where he was exceedingly nervous and he had troubles with his memory. Well, isn't this all credibility, though, for the jury? I mean, he didn't remember anything. Yeah, and my... Also, one of my content... I disagree that he didn't remember everything. Although he's running restaurants. I guess he ran a restaurant in Mexico. Yeah, and that wasn't disputed at trial. He did. He owned, I think, one restaurant and a share in another restaurant. Just to sum up on that point, I think that providing an expert to support his testimony would have, in fact, eliminated the need for him to testify in the first place, and I'm out of time now, but thank you very much. Thank you, counsel. We'll hear now from the government. May it please the Court, my name is Bruce Ferg, assistant United States attorney on behalf of the government in this case. The crux of this appeal, obviously, is the claim of ineffective assistance of counsel on the part of trial counsel, Mr. Black, and the record, I think, has been fairly thoroughly established for this Court to look at because there was a motion for new trial, and Judge Roll, who had been a trial judge, had seen this case only a few months before, basically said Mr. Lee, former DEA agent's affidavit, simply would not have made any difference. There was nothing in there. Well, let me ask you a question that opposing counsel alluded to this just as he was running out of time. What would have happened in this trial had the government's expert testified that this is a typical pattern for couriers, and there's no other possibility but that this person was a knowing courier? And then instead of having the defendant testify, there was a counter-expert that said, well, it's not common, but it does happen. And here are some of the circumstances in which it happens. And that were the case that went to the jury. Do you think that that would have been potentially a different outcome for the case? I would submit not. And the reason is, first of all, the basic evidence, quite aside from Agent Bortfeld's testimony against the defendant, that if a courier of a ton of marijuana stuck into this machine, which it has taken, it was not just one person, but the testimony was it would have taken a crew of probably several people with a facility where you could get underneath three or four days to put this in there. Just the inherent incredibility or unlikelihood of that happening makes it extremely improbable. Plus, although Agent Bortfeld testified to all these reasons, most of it is simply common sense, the fact that it's extremely difficult to know where an unknown courier is going to take his machine, whether he may have some other problem, trouble on the road where he has to get his service and it's going to be found, all of these things, which actually are basically common sense. They are presented through Bortfeld as, quote, expert testimony. But actually, when you read the government's closing argument, it was pointed out this is just common sense. The difficulties inherent in using an unknown courier, particularly for something as large as a quarter ton, where basically you'd have to go and, in effect, steal back that motorhome and take it some other place where they had to completely take it apart, get out the water tank and so forth in order to even get at the marijuana, it's just inherently unlikely. But, again, suppose we had just this battle of the experts. There would be exactly the kind of cross-examination that Judge Wallace was talking about. And it's evident. But there would be that on both sides. I mean, presumably you could cross-examine the government's expert by saying, well, doesn't this happen occasionally? In this circumstance, this circumstance, this circumstance. Well, it comes down to the reasonable judgment of the trial counsel. This is what we're talking about in retrospect, whether or not he was reasonably effective. And that's the standard that this Court established in the Coleman case. It's not what the best lawyer would do or even what a particularly good lawyer would do in the case. And I'm quoting only whether some reasonable lawyer could have acted in the circumstances as the questioned lawyer did. And certainly when Mr. Black, whom Judge Roll noticed was an extremely experienced counsel, had been in federal court a number of times, and from the way they talked about each other, I suspect had crossed swords with the government's trial counsel in this case, who was not me, and was concerned about the quality of his cross-examination, it certainly was reasonable for him to say, what am I going to do? You know, how should I approach this case? And his affidavit says he did specifically consider bringing in a counter-expert and thought it would not be worthwhile. Now, we can hypothesize what would have happened whether Mr. Cates, you know, if it had been developed further, but the fact is Mr. Black said, I considered this, I did have lots of conversations with the defendant about how to handle this case, including two six-hour trips from Phoenix down to Nogales, Arizona, where the motorhome was located, so they had lots of time to go over the whole process of trial and what was likely to come out and how to handle that. And again, it's basically speculation here, because interestingly enough, although at the motion for new trial, we have these affidavits from the son and from the purported expert, we have nothing from Mr. Cates. He never has put into evidence an assertion that if something else had been done differently, I would in fact decline to testify. What we have is Mr. Black's unconverted affidavit saying that it was always his intention to testify, and there's no evidence that there's anything that Mr. Black could have done differently, prepared differently, argued differently, that would have persuaded him not to take the stand. So we're basically talking again about, well, my expert, the government expert, who has dealt specifically with trafficking and the transportation of marijuana in the Southwest for the last 10 years, had actually infiltrated these kind of organizations, as opposed to Mr. Lee, who had been off doing terrorism work in Afghanistan and various other things, which are valuable, obviously, but there was nothing even in his affidavit which indicated that he had conducted the kind of personal investigations that were involved in this case. That was part of the reason why Judge Roll found his affidavit so unpersuasive. He said, well, that's fine what he did, but even the examples that he offered were not about the Southwest border or similar situations. The closest thing to it was one case in San Diego, I guess, where they'd taken a car across the border to have it reupholstered. That's very different from driving 300 miles or so from, I was about to say Wyoming, it was Puerto Penasco to Phoenix. Mr. Cates said he never had any indication that anybody was following him. There is no indication that the basic requirements that Mr. Lee laid out in his affidavit for this kind of a case were ever met. He indicated, and this is the final paragraph of his affidavit, which is pages 200 and 201 of ER2, he said that he's claiming or he would have said that Agent Bortfeld's, the government's testimony, concerned that the number one issue is loss of control over the load of narcotics is simply incorrect in situations where a potential unwitting courier has established a specific and stable routine of crossing the border. Well, Mr. Cates went back and forth frequently, but he himself testified that it could be two weeks, it could be more frequently, if they ran out of food, it could be less frequently. Traveling on the same routes time and again, arriving at an easily known final destination. Now, Mr. Cates had a house in Phoenix, but there is no evidence that anybody in Mexico knew where that house was. He received his mail in a post office box in Lukeville just across the border, not at his home in Phoenix. So there is basically no evidence and there's nothing in Lee's affidavit showing that this supposed ring that was intended to use Mr. Cates had any way of knowing where he was going in order to then retrieve this motorhome, take it someplace, strip it down, take the water tank out, and pull a marijuana out. And so even if we're talking about a battle of the experts, Mr. Lee simply was unarmed in comparison to the government's expert. Could I ask a question? Were you trial counsel? No, I was not, sir. Apparently, and again, I'm basing this on the record because I've not discussed it with him personally, but apparently from the statements that the government counsel made to the court, he had a theory that by showing this marriage with this 29-year-old lady that he might be able to establish a motive that would indicate that there was need for a grander lifestyle. There were also brochures for apparently some expensive condominiums or other properties that were found in Mr. Cates' possession. But the bottom line is that the jury was specifically told that really shouldn't be in front of you, they were instructed to disregard it, there's nothing in the record showing that they couldn't, and the evidence was not argued in closing argument. I understand. I just never understood the relevance of it. Most judges that are 70 are going to have difficulty with that one. 80, it'll get worse. Well, he had a theory, but my time's up. Thank you. Mr. Byer, as the government exceeded its time, you may have a minute for rebuttal if you want it. Mr. Ferg pointed out that Mr. Albert, the trial attorney, the government's trial attorney, in closing argued 22 common-sense reasons about why Mr. Cates wouldn't be an unwitting courier. We submit that those 22 common-sense reasons were really, in fact, based on the primary testimony of Agent Bordfeld was it doesn't make sense, because there would be a loss of control, and it doesn't make sense, because recovery would be difficult. I would submit that the testimony of Agent Lee would have been able to undermine these assertions that contradict the evidence. I would submit that control and recovery would have been difficult in this situation, and one of the things I asked for in my brief, and one of the errors that I believe that was committed at the trial court level was the failure to hold an evidentiary hearing on this matter, and I would ask the court to remand it for that reason. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Wallace, Graber, Ezra